UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
New Haven Division

_____
In re:                                            :            Chapter 11
    Curtis J. Jackson, III,                 :            Case No. 15-21233 (AMN)
       *Debtor*                                  :
_____ :
G-Unit Film & Television, Inc., and         :            Adv. No.: 15-02046
Curtis J. Jackson, III,                            :
       *Plaintiffs*                                :
                                                          :
    v.                                             :
                                                          :
Andrew W. Jameson,                          :
       *Defendant*                             :
_____ :            Re: ECF No. 4

**<u>Memorandum of Decision and Order Compelling Arbitration
and Staying this Adversary Proceeding Until Further Order of the Court</u>**

    Before the court is defendant Andrew W. Jameson's ("Jameson") motion for an order staying this adversary proceeding and compelling arbitration pursuant to a Consultant and Collaboration Agreement dated January 1, 2013 (the "Agreement"), between Jameson and plaintiff G-Unit Film & Television, Inc. ("G-Unit")(the "Motion"). ECF No. 4. The debtor in the underlying bankruptcy case, case number 15-21233 (the "Main Case"), Curtis J. Jackson, III ("Jackson), is also a plaintiff in this adversary proceeding, asserting claims against Jameson that appear related to Jameson's conduct vis-à-vis the Agreement.

    Jameson, as a claimant, filed a Demand for Arbitration with the American Arbitration Association naming G-Unit as the sole respondent, dated the same day the complaint commencing this adversary proceeding was filed, September 22, 2016. *See*, ECF No. 4-1, pp. 1; 15-16.

    For the reasons that follow, the court grants the Motion and orders that:

(1) G-Unit and Jameson shall proceed with arbitration pending before the American Arbitration Association; (2) Jackson shall also proceed with the arbitration pending before the American Arbitration Association as a witness, if called, and as a party, once joined; and, (3) this adversary proceeding shall be stayed until further order of the court.

## I.     Jurisdiction and Venue

This court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157(b) and 1334(b) and the District Court's Order of referral of bankruptcy matters, dated September 21, 1984.  This adversary proceeding relates to the Main Case pending in this district; therefore, venue is proper in this district pursuant to 28 U.S.C. § 1409.  This is a non-core proceeding.

## II.    Procedural Background

G-Unit and Jackson filed a complaint in this court against Jameson on September 22, 2015, seeking damages for, among other things, breach of the Agreement, breach of fiduciary duty and violations of the California Labor Code.  On or about the same day, September 22, 2015, Jameson filed a demand for arbitration with the American Arbitration Association, naming G-Unit – but not Jackson – as a respondent.  ECF No. 4-1; pp.1; 15-16.  Thereafter, on October 28, 2015, Jameson filed the Motion seeking an order staying this adversary proceeding and compelling arbitration of plaintiffs' claims in accordance with the Agreement's arbitration clause. ECF No. 4.  The parties briefed the issues raised in the Motion, ECF Nos. 25 and 26, and the court heard oral argument during a hearing on February 2, 2016 (the "Hearing"). ECF No. 29 [audio file].

G-Unit, through counsel, conceded that it could be compelled to arbitrate in California and that the court could not stay the arbitration as to the G-Unit claims

against Jameson. ECF No. 29 at 00:17:45 – 00:18:30; 00:46:00 – 00:47:00; 00:50:49 – 00:51:16. However, Jackson, through the same counsel, argued that he could not be compelled to arbitrate in California due to the application of California Code of Civil Procedure § 1281.2(c) ("§ 1281.2(c)") to the Agreement, and that the same provision gave the court the discretion to stay the arbitration entirely and to compel Jameson to litigate his claims before the Bankruptcy Court. ECF No. 29 at 00:23:20 – 00:25:40; 00:28:30 – 00:29:04.[1] This argument was raised for this first time during the Hearing and so the court ordered additional briefing as to the application of § 1281.2(c). ECF No. 5; *see also* ECF No. 36 in *Jackson v. Jameson*, Case No. 15-02051; *see,* ECF Nos. 26 and 37.

### III.   Factual Background:   The Agreement

On or about January 1, 2013, plaintiff G-Unit Film & Television, Inc. entered into the Consultant and Collaboration Agreement with defendant Andrew W. Jameson related to the production of television programming. ECF No. 4-1 at 4-10 (copy of the Agreement). While the Agreement was signed only by an agent for G-Unit and Jameson, it included substantive provisions directly relating to and intended to affect Jackson. For example, the Agreement prevented Jackson from entering into production agreements with other television producers, gave him rights to production credits, and expressly excluded his activities as a musician and actor from its terms. The Agreement stated, in relevant part:

> 5. ATTACHMENT TO PROJECTS.  [Jameson] shall be attached in perpetuity to all Collaboration Projects (as an "executive producer" with respect to Collaboration Projects intended as television productions, and as a "producer" with respect to all other Collaboration Projects). **Further,**

---

[1]    The court reviewed the audio file of the hearings using VLC Media Player. All citations to the audio file of a hearing are to the ECF number of the recording and then to the location of the cited testimony as follows: ECF No. ___ at hours:minutes:seconds.

> **during the Term, [G-Unit] (including [G-Unit's] principal, [Jackson,] and any related or affiliated entity(ies)) shall not enter into any agreement with any studio, network, financier, distributor, or other third party to produce any television project or new media project (whether a [G-Unit] Project or a project originated by a third party) unless [Jameson] shall also be attached thereto as an executive producer pursuant to the terms hereof**; provided that in the case of a new media project, such project shall be in the nature of series television and substantially unrelated to Jackson's activities in the music industry. [G-Unit] may, its sole discretion, attach [Jameson] to [G-Unit] Projects, other than television projects (e.g., theatrical motion picture projects), subject to Jameson's consent thereto; provided that any such agreement shall be confirmed in writing. Any Collaboration Project or [G-Unit] Project hereunder to which [Jameson] shall become attached shall be a "Project".
> ECF No. 4-1 at 5 (*emphasis added*).
> . . .
>
> B. CREDIT. [**G-Unit] and [Jameson] agree that they shall share producing credit on all Projects produced hereunder in substantially the following form: "Executive Producer: Curtis "50 Cent" Jackson and Andrew Jameson" and the parties' individual producing credits shall be tied to each other in all respects.** Additionally, the parties agree that [G-Unit] shall be entitled to receive company credit on all Projects hereunder, and subject to network/financier approval, as applicable, [the Defendant] shall also be entitled to receive a separate company credit on all Projects hereunder in a second position to Company."
> ECF No. 4-1 at 6 (*emphasis added*).
>       . . .
>
> 8. OUTSIDE PROJECTS AND SERVICES . . . **Furthermore, nothing contained herein shall prohibit or restrict Jackson's right to perform acting, publicity, personal appearance, endorsement, voice-over, songwriting, signing or musical performing services in the entertainment industry**. Similarly, neither [Jameson] nor Jackson shall be obligated to render any services other than customary development and producing services In connection with the Projects. In the event Jackson elects, in his sole discretion, to render services other than customary development and producing services in connection with any Project hereunder, (e.g.) acting, soundtrack, music supervision and/or music production services, he shall be free to independently negotiate the terms and conditions thereof without any obligation to [Jameson].
> ECF No. 4-1 at 7 (*emphasis added*).

Further, the Agreement contained both an arbitration provision and a choice of law provision, which are the subject of the present dispute between the parties.

15. <u>ARBITRATION</u>.  **Any and all controversies arising under this Agreement or in connection with the existence**, execution, or validity hereof, or in connection with the Projects or the rights therein or thereto, or the right of any party to avoid or void this Agreement on any ground, or the construction, performance, operation, breach, continuance or termination of the same **shall be settled by arbitration in Los Angeles California**, pursuant to the rules then prevailing of the American Arbitration Association, unless the parties are able to arrive at a mutually satisfactory resolution to any such controversy by written agreement.  The cost of the arbitration, including reasonable outside attorneys fees, shall be borne by the party which does not prevail therein.
. . .

17. <u>MISCELLANEOUS</u>.  **This agreement shall be construed in accordance with, and governed by, the laws of the State of California applicable to agreements executed and to be performed entirely therein**.  No waiver by any party of a breach of this Agreement shall be deemed a waiver of any preceding, continuing, or succeeding breach of the same or any other thereof. . . . **This Agreement is not for the benefit of any third party who is not referred to herein** and shall not be deemed to give any right or remedy to any such third party."
ECF No. 4-1 at 9 (*emphasis added*).

## **IV. The Parties' Arguments**

Plaintiffs G-Unit and Jackson now argue that §1281.2(c) applies to the Agreement and that, therefore, this court has the discretion to stay the arbitration agreement and instead order all of the parties to litigate their disputes in the bankruptcy court.  ECF No. 36 at 3-5.  Jameson, seeking to proceed with arbitration, responds that § 1281.2(c) does not apply here because: (1) the choice of law clause included in the Agreement precludes its application; (2) Jackson does not meet all three elements required by §1281.2(c); and, (3) even if § 1281.2(c) does apply, the court should still order the arbitration to proceed, compel Jackson to arbitrate his claims against

Jameson, and stay the adversary proceeding in this court[2] pending the arbitration's resolution. ECF No. 37 at 8-14; 4-8; 14-16.

## V. Discussion

A. <u>Whether the Agreement Incorporates California Code of Civil Procedure § 1281.2(c), and if so, Whether It Provides the Court with Discretion to Stay the Arbitration and to Proceed with the Adversary Proceeding.</u>

Under the Federal Arbitration Act (the "FAA"), "in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration," a party may move to "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. In the bankruptcy context, if a claim is non-core – as the claims here are – the bankruptcy court must stay the adversary proceeding pending outcome of the arbitration proceeding. *MBNA America Bank, N.A. v. Hill*, 436 F.3d 104, 108 (2d Cir. 2006); *In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 166 (2d Cir. 2000). "The 'principal purpose' of the FAA is to 'insur[e] that private arbitration agreements are enforced according to their terms.'" *AT&T Mobility LLC v. Concepcion, et ux.*, 131 S.Ct. 1740, 1748 (2011).

In contrast, under the California Arbitration Act, California Code of Civil Procedure § 1281 *et seq.*, a court may exercise discretion and stay an adversary proceeding in favor of the adversary proceeding pending before the bankruptcy court here. *See,* California Code of Civil Procedure § 1281.2(c). Generally, a federal statute supersedes a state statute; however, the Supreme Court has recognized that parties'

---

[2] The court stays – but does not dismiss – this adversary proceeding. *See,* Katz v. Cello Paternship, 794 F.3d 341 (2015).

ability to enter into an arbitration agreement includes the ability to choose which law, federal or state, governs the agreement. See, *Volt Information Services, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 476 (1989). Therefore, parties who provide that the California Code of Civil Procedure applies to their agreements may avoid being compelled to arbitrate their claims, because § 1281.2(c) gives courts the discretion to stay arbitration and try the claims before them under some circumstances.

To determine whether parties intended to incorporate the California Code of Civil Procedure instead of the FAA, the court must examine their choice of law clause, and, where it provides that California law governs, the court must examine the choice of law and arbitration clauses consistently with California state law. *Volt Information Sciences, Inc.*, 489 U.S. at 481 ("Whether a contract evinces the parties' intent to incorporate California procedural law is a question of contract interpretation, which is ordinarily a question of state law."); see, e.g., *Cronus Investments, Inc. v. Concierge Services*, 35 Cal.4th 376, 383-384 (2005); *Mount Diablo Med. Ctr. v. Health Net of California, Inc.*, 101 Cal. App. 4th 711, 722, 124 Cal. Rptr. 2d 607 (2002). Broad choice of law provisions that state the contract will be "governed by the laws of the State of California," demonstrate the intent to incorporate California Code of Civil Procedure § 1281.2(c). *Cronus Investments, Inc. v. Concierge Services*, 35 Cal.4th 376, 387 (2005); see also *Mastick v. TD Ameritrade, Inc.*, 209 Cal.App.4th 1258, 1264-1265 (Second District, Division 6, 2012) (holding that where a choice of law provision states that the law of California "governs" the contract, the California Arbitration Act, rather than the Federal Arbitration Act, applies). However, choice of law provisions that merely construe a contract in accordance with California substantive law, do not demonstrate

the intent to apply § 1281.2(c).  *See, e.g.*, *Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1209 (9th Cir. 1998) (choice of law clause stating "this Agreement between Foodmaker International and [Wolsey] shall be interpreted and construed under the laws of the State of California, U.S.A," incorporated California substantive law, not California law governing "the allocation of authority between courts and arbitrators."); *BioMagic, Inc. v. Dutch Brothers Enterprises*, LLC, 729 F.Supp.2d 1140, 1147-1149 (C.D. Cal. 2010) (holding that a provision stating, "[t]his Agreement shall be construed, and the legal relations between the parties hereto shall be determined, in accordance with the law of the State of California, and any actions to enforce this agreement shall take place in California," demonstrated the parties' intent to incorporate California substantive law only and not state procedural rules governing arbitration); *Stone & Webster, Inc. v. Baker Process*, Inc., 210 F. Supp.2d 1177 (S.D. Cal. 2002).

The guiding case in this Circuit as to whether a choice of law provision is broad enough to demonstrate the parties' intent to incorporate § 1281.2(c), is *Security Insurance Company of Hartford v. TIG Insurance Company*, 360 F.3d 322, 328 (2d Cir. 2004).  There, the Second Circuit determined that a choice of law provision that stated: "This Agreement shall be governed by and construed according to the laws of the state of California," was sufficiently broad to demonstrate the parties' intent to incorporate § 1281.2(c).  *Security Ins. Co. of Hartford v. Trustmark Ins. Co.*, 283 F. Supp. 2d 602, 603, 611 (D. Conn. 2003), *aff'd* 360 F.3d 322.

Jameson argues that the instant case is distinguishable from *Security Insurance*. ECF No. 37 at 6-7.  The Agreement here states: "This agreement shall be construed in accordance with, and governed by, the laws of the State of California applicable to agreements executed and to be performed entirely therein."  Jameson contends that the

phrase "applicable to agreements executed and to be performed entirely therein" is a "limiting" phrase that makes the choice of law provision narrow rather than broad.  ECF No. 37 at 6-7.  This is so, Jameson argued because "[t]he CAA is not applicable to all agreements executed and performed in California, merely because California is the location of such execution and performance."  *Id.*

The court disagrees.  Pursuant to California Code of Civil Procedure § 1646, absent a choice of law provision, a "contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not include a place of performance, according to the law and usage of the place where it is made." Consequently, the second phrase of the choice of law clause does not limit the breadth of the clause, rather, it reaffirms it.  In accordance with California Code of Civil Procedure § 1646, the court reads the choice of law clause to state, in effect, that the parties made the choice that only California law and procedure *could* apply to the Agreement.

Therefore, the court finds that the language in the choice of law provision in the Agreement is substantially similar to that in the *Security Insurance Company of Hartford* cawse, and, therefore, the court is compelled here to reach the conclusion that the parties intended to incorporate the California Code of Civil Procedure into the Agreement.

Accordingly, if the analysis were to end here, the court may have discretion to proceed with the adversary proceeding notwithstanding the Agreement's arbitration clause.  But, it does not.

B. <u>Whether the Court Lacks Discretion to Stay the Arbitration on the Basis that Jackson is a Third Party to the Arbitration as Contemplated by § 1281.2(c).</u>

Pursuant to California Code of Civil Procedure § 1281.2(c), a court has discretion to refuse to enforce an arbitration agreement only where "a party to the arbitration is also a party to litigation in a pending court action . . . with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact." *See Mastick v. TD Ameritrade, Inc.*, 209 Cal. App. 4th 1258, 1265, 147 Cal. Rptr. 3d 717, 723 (2012). Jameson contends that Jackson is not a third party to the Agreement within the meaning of § 1281.2(c) and therefore the court has no discretion to stay the arbitration as to G-Unit in favor of the adversary proceeding as to G-Unit and Jackson. For the reasons that follow, the court agrees.

A court's discretion to stay an arbitration pursuant to § 1281.2(c), "does not come in to play until it is ascertained that the subdivision applies, which requires the threshold determination of whether there are nonarbitrable claims against at least one of the parties to the litigation (e.g. a nonsignatory)." *Molecular Analytical Systems v. Ciphergen Biosystems, Inc.*, 186 Cal.App.4th 696, 709, 111 Cal.Rptr.3d 876, 889 (Cal. 6th Distr. 2010). Therefore, a trial court such as a bankruptcy court, "does not have discretion to deny arbitration under ... section 1281.2(c) absent the presence of a third party. The term 'third party' for purposes of section 1281.2(c), must be construed to mean a party that is not bound by the arbitration agreement. Whether a defendant is in fact a third party for purposes of Code of Civil Procedure section 1281.2, subdivision (c), is a matter of law subject to de novo review." *Laswell v. AG Seal Beach, LLC*, 189 Cal. App. 4th 1399, 1406, 117 Cal. Rptr. 3d 310, 316-17 (2010).

"The term 'third party' for purposes of § 1281.2(c) must be construed to mean a party that is not bound by the arbitration agreement." *RN Solution, Inc. v. Catholic Healthcare West*, 165 Cal.App.4th 1511, 1519, 81 Cal.Rptr.3d 892 (2007). "[I]n many cases, nonparties to arbitration agreements are allowed to enforce those agreements where there is sufficient identity of parties." *Valley Casework, Inc. v. Comfort Construction, Inc.*, 76 Cal.App.4th 1013, 1021, 90 Cal.Rptr.2d 779 (Cal Ct. App. Fourth Dis. 1999); *see also Truppi v. Pasco Eng'g, Inc.*, No. D059494, 2012 WL 5194023, at *5 (Cal. Ct. App. Oct. 22, 2012), *as modified on denial of reh'g* (Nov. 16, 2012). Further, the court may equitably estop a nonsignatory from arguing that an arbitration agreement in the contract should not apply to him where his claims are "dependent upon, or inextricably intertwined with" the contract itself, *see JSM Tuscany, LLC v. Superior Court*, 193 Cal. App. 4th 1222, 1239, 123 Cal. Rptr. 3d 429, 443 (2011), or are "based on the same facts and are inherently inseparable form arbitrable claims against signatory defendants". *See Laswell v. AG Seal Beach, LLC*, 189 Cal. App. 4th 1399, 1407, 117 Cal. Rptr. 3d 310, 317-18 (2010).

1. *Identity of the parties.*

There is a sufficiently close identity of the parties to enforce an arbitration clause against a non-signatory where, for example, the nonsignatory was a signatory's alter ego, *Rowe v. Exline*, 153 Cal. App. 4th 1276, 1285, 63 Cal. Rptr. 3d 787, 793 (2007), the nonsignatory was an agent and an employee of the signatory, or the nonsigantory was a managing agent and director of the signatory, *RN Sol., Inc. v. Catholic Healthcare W.*, 165 Cal. App. 4th 1511, 1520, 81 Cal. Rptr. 3d 892, 899-900 (1st Dist. Div. 1 2008) (citing *Harris v. Superior Court*, 188 Cal. App. 475, 478, 233 Cal. Rptr. 186 (1986)).

In determining whether there is a sufficient identity between the signatory and non-signatory such that the non-signatory is a third party to the arbitration agreement within the meaning of § 1281.2(c), California courts have considered: whether the signatory and non-signatory were represented by the same attorney, whether the signatory and nonsignatory are related entities, *Laswell v. AG Seal Beach, LLC*, 189 Cal. App. 4th 1399, 1407, 117 Cal. Rptr. 3d 310, 318 (2010), whether the claims of the signatory and non-signatory are based on the same facts and theory, *see*, *e.g.*, *Acquire II, Ltd. v. Colton Real Estate Grp.*, 213 Cal. App. 4th 959, 973-974, 976, 153 Cal. Rptr. 3d 135, 147 (2013) whether the non-signatory is a member of a partnership that has agreed to arbitrate disputes, *Valley Casework, Inc. v. Comfort Constr., Inc.*, 76 Cal. App. 4th 1013, 1021, 90 Cal. Rptr. 2d 779, 785 (1999), and whether the nonsignatory accepted benefits under the agreement containing the arbitration clause. *Norcal Mutual Ins. Co. v. Newton*, 84 Cal.App. 4th 64, 81-82, 100 Cal. Rptr.2d 683 (2000);

Here, each of these examples applies. Jackson is G-Unit's sole stock owner and Jackson concedes that G-Unit's purpose is to "furnish" Jackson's "television production services." Main Case ECF No. 359 at 15;[3] ECF No. 1 at ¶ 8. Further, Jackson made all of G-Unit's decisions, was its manager and Jackson's claims arise from the Agreement. ECF No. 1 at ¶¶ 5, 9, 23. For example, the first claim in the complaint is that the Agreement was a subterfuge for Jameson to act as a talent agency for Jackson's entertainment services rather than as a consultant, a claim that would not exist but for the Agreement. ECF No. 1 at ¶¶ 38, 39. Finally, the Agreement states that the Agreement was not for the benefit of any parties not listed therein, but Jackson is

---

[3] "Main Case ECF No." references docket entries in the underlying chapter 11 bankruptcy case, case number 15-21233 (AMN). References to docket entries in this adversary proceeding are noted as "ECF No. ___."

repeatedly referenced in the Agreement.  ECF No. 4-1 at 9.  As Jackson's rights and obligations were discussed throughout the Agreement, the clear implication is that he was an intended beneficiary of its terms and conditions.

Based on these facts, the court determines that Jackson shares a sufficient identity with G-Unit that he is not a third party to the Agreement within the meaning of § 1281.2(c).  Because Jackson is not a third party, § 1281.2(c) does not have the effect of investing the court with discretion to stay the arbitration and compel Jameson to litigate the disputes surrounding the Agreement in the bankruptcy court.  "Plaintiffs cannot defeat [a] Defendant['s] contractual right to arbitration by simply joining [a] Plaintiff[] who agreed to arbitration with [a] Plaintiff[] who . . . did not agree to arbitration.  *Acquire II, Ltd. v. Colton Real Estate Grp.*, 213 Cal. App. 4th 959, 975, 153 Cal. Rptr. 3d 135, 148 (Ct. App. Fourth Dist. 2013)

   2. *Equitable estoppel.*

Alternatively, if Jackson is a third party within the meaning of § 1281.2(c), he is equitably estopped from asserting that the lack of his signature on the Agreement – when among other things, the Agreement references Jackson repeatedly, Jackson is the sole owner of the signatory G-Unit, and Jackson exerts control over much of the implementation of the Agreement – precludes enforcement of the Agreement's arbitration provision as to him.

Generally, the equitable estoppel doctrine applies, "when a party has signed an agreement to arbitrate but attempts to avoid arbitration by suing nonsignatory defendants for claims that are based on the same facts and are inherently inseparable from arbitrable claims against signatory defendants."  *Rowe v. Exline*, 153 Cal. App. 4th

1276, 1287, 63 Cal. Rptr. 3d 787, 795 (2007)(*internal citations and quotation marks omitted*). "Claims that rely upon, make reference to, or are intertwined with claims under the subject contract are arbitrable." *Id.*

The inverse – as here – is also true: a non-signatory plaintiff may be equitably estopped from repudiating the arbitration agreement in a contract where it sued a signatory on a cause of action that is "dependent upon, or inextricably intertwined with, the obligations" imposed by the contract. *JSM Tuscany, LLC v. Superior Court*, 193 Cal. App. 4th 1222, 1239, 123 Cal. Rptr. 3d 429, 443 (Cal. 2d Dist., 3d Div., 2011). "This is particularly true where . . . all of the plaintiffs, signatory and nonsignatory, are related entities. A nonsignatory can be compelled to arbitrate when a preexisting relationship between the nonsignatory and one of the parties to the arbitration agreement, making it equitable to compel the nonsigantory to arbitrate as well." *Id; see also, Boucher v. All. Title Co., Inc.*, 127 Cal. App. 4th 262, 269, 25 Cal. Rptr. 3d 440, 444 (2005) ("[A] party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him. . . . A nonsignatory is estopped from refusing to comply with an arbitration clause when it receives a 'direct benefit' from a contract containing an arbitration clause").

Here, the Agreement provided Jackson with rights that he did not otherwise have, specifically producer credits to television programming that Jameson procured and/or helped create, while allowing him to remain free to pursue opportunities to sing or act without restriction. ECF No. 4-1 at 5-7. Thus, it appears that Jackson is now attempting to distance himself from the Agreement from which he arguably obtained a

benefit.  Moreover, as already noted, Jackson's causes of action are "inextricably intertwined" with the Agreement.  Jackson's third claim for relief is based on a breach of a fiduciary duty that Jameson owed to him, a claim that could not exist without relying on the Agreement.  ECF No. ECF No. 1 at 12 ¶ 53.

Based on these facts, the court determines that Jackson is estopped from asserting he is a third party to the Agreement – rather than an intended beneficiary of it.  Accordingly, the provision of § 1281.2(c) that under some circumstances provides a trial court with discretion to stay an arbitration in favor of a court proceeding does not apply to the facts here.  The court is therefore required to give effect to the parties' choice of law provisions in the Agreement and to stay this court proceeding in favor of the arbitration proceeding.

## VI.     Conclusion and Ruling

After consideration of the matters of record in this case and in the underlying chapter 11 bankruptcy case, the briefing and arguments of counsel, the court's review of the Agreement and analysis of applicable law, it is hereby

ORDERED, that G-Unit Film & Television, Inc. and Curtis James Jackson, III shall proceed to arbitrate their claims against the defendant Andrew W. Jameson before the American Arbitration Association; and it is further

ORDERED, that this adversary proceeding is stayed until such arbitration shall be had and until further order of the court.

Dated on September 30, 2016, at New Haven, Connecticut.

*Ann M. Nevins*
United States Bankruptcy Judge
District of Connecticut